**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JONATHAN PAUL JONES,                    )
                          Plaintiff,    )
                                        )
vs.                                     )          Civil Action No. 14-412
                                        )
                                        )          Judge Mark R. Hornak/
                                        )          Magistrate Judge Maureen P. Kelly
COUNTY EXECUTIVE RICH                   )
FITZGERALD; DR. KARL WILLIAMS,          )
*Medical Examiner*; LAB TECH LORENZ,    )
                          Defendants.   )


## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that, pursuant to the screening provisions of the Prison Litigation Reform Act, Plaintiff's Complaint be dismissed before being served because the Complaint fails to state a claim upon which relief can be granted.

### II.  REPORT

Jonathan Paul Jones ("Plaintiff") is currently incarcerated in the State Correctional Institution at Coal Township ("SCI-Coal Township").  Plaintiff has filed a civil rights complaint (the "Complaint") naming three Defendants and complaining about DNA testing at the Allegheny County Medical Examiner's Office.  Plaintiff makes two claims.  First, that his Sixth Amendment rights were violated, apparently during his criminal trial, by the introduction of false DNA evidence.  Second, Plaintiff invokes the False Claims Act, but it is not entirely clear from the face of the Complaint what he is claiming.

It is recommended that the Complaint be dismissed for failure to state a claim for at least three independent reasons.  First, all actions asserted  in the Complaint occurred between April 9,

1999 to October 18, 2000, and are time barred under the applicable statute of limitations. Second, to the extent that Plaintiff is calling into question the validity of the DNA results which were utilized in Plaintiff's trial, such claims are barred by <u>Heck v Humphrey</u>. Third, as to Plaintiff's False Claims Act claim, Plaintiff fails to state a claim because he fails to allege the necessary elements of a False Claims Act claim.

### A. RELEVANT PROCEDURAL HISTORY

At the time of the initiation of this civil action, Plaintiff was a prisoner at the SCI-Coal Township. Plaintiff is proceeding *pro se*. Plaintiff's Motion for Leave to Proceed In Forma Pauperis (the "IFP Motion"), was granted. ECF No. 6. Thereafter, Plaintiff's Complaint was filed. ECF No. 7.

### B. APPLICABLE LEGAL PRINCIPLES

In the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners, in an effort to curb the increasing number of frivolous and harassing lawsuits brought by persons in custody. The PLRA permits courts to screen complaints filed by prisoners and dismiss them before they are served if the complaints fail to state a claim or are frivolous or malicious. <u>See</u> <u>Santana v. United States</u>, 98 F.3d 752, 755 (3d Cir. 1996). Because Plaintiff is a prisoner who has been granted IFP status, and/or because Plaintiff is a prisoner suing government employees, the screening provisions of the PLRA apply. <u>See</u> 28 U.S.C. §1915(e) ("[n]otwithstanding any filing fee, or any portion thereof, that may have been paid [by a prisoner granted IFP status], the court shall dismiss the case at any time if the court determines that – (A) the allegation of poverty is untrue; or (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is

immune from such relief."); 28 U.S.C. § 1915A ("[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").

In performing the Court's mandated function of sua sponte review of complaints under 28 U.S.C. §§ 1915(e) and 1915A to determine if they fail to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Brodzki v. Tribune Co., 481 F. App'x 705 (3d Cir. 2012) (applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)); Courteau v. United States, 287 F. App'x 159, 162 (3d Cir. 2008) ("the legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions.").

As the United States Supreme Court explained in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Under this standard, the court must, as a general rule, accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). Moreover, under the

3

12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), *amended by,* 275 F.3d 1187 (9th Cir. 2001). The court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

The question to be resolved is: whether, taking the factual allegations of the Complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. Or put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Furthermore, because Plaintiff is pro se, courts accord an even more liberal reading of the Complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519 (1972).

## C. DISCUSSION

The Complaint names three Defendants: 1) County Executive Rich Fitzgerald; 2) the County Medical Examiner, Dr. Karl Williams and 3) "Lab Tech Lorenz" who testified at Plaintiff's criminal trial. The complete factual allegations of set forth in the Complaint are as follows:

The Lab represented false information.

The Lab has Inter-Office Personnel Problems.

The Lab was not accredited to perform DNA TEST. (1999 to 2000)

The Lab failed to use Federal Money to bring it up to standards. (see: Exhibits 1, 2, 3).

(Fraud).

ECF No. 7 at 2, ¶ IV.C. Plaintiff attached exhibits to the Complaint. The exhibits consisted of two newspaper articles from the Pittsburgh Tribune Review concerning the Allegheny County Medical Examiner's Office and an Order from the Pennsylvania Supreme Court concerning the adoption of a new Rule 574 of the Pennsylvania Rules of Criminal Procedure, addressing the introduction at trial of forensic laboratory reports or test results. In response to a question on the form Complaint as to the date of the event of which Plaintiff complains, Plaintiff wrote "4-9-1999 to 10-18-2000." Id., ¶ IV.B. In response to the question as to which federal law does Plaintiff claim was violated, Plaintiff replied, "The 6th Amendment/False Claims Act." Id., ¶ III.

## 1. The Statute of Limitations Bars This Action

A federal district court may *sua sponte* raise the statute of limitations in screening a complaint so long as the statute of limitations defect is apparent from the face of the complaint. See, e.g., Dellis v. Corrections Corp. of America, 257 F.3d 508, 511 (6th Cir. 2001); Alston v. Tennessee Dept. of Corrections, 28 F. App'x 475 (6th Cir. 2002); Tate v. United States, 13 F. App'x 726 (9th Cir. 2001); Johnstone v. United States, 980 F.Supp. 148, 154 (E.D.Pa. 1997) ("When a complaint on its face shows that the action was filed outside of the applicable limitations period, and the court has satisfied itself that no legal rule tolls or otherwise abrogates the limitations period, sua sponte dismissal is appropriate under § 1915.").

In this case, the Complaint shows on its face that the statute of limitations bars this action. The alleged wrongful acts by the Defendants, giving rise to Plaintiff's cause of action occurred, according to the Complaint, between April 9, 1999 and October 18, 2000. ECF No. 7 at 2, ¶ IV.A. Plaintiff did not "file" this civil action, which would stop the running the of the statute of limitations, until, at the earliest, March 25, 2014, the date he signed his Complaint and his IFP application.[1]

---

[1] The so called "prisoner mail box rule" provides that "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court." Burns v. Morton, 134 F.3d 109, 113 (3d Cir 1998); United States v. Soto, 159 F.Supp.2d 39, 45 (E.D. Pa. 2001). The prisoner mail box rule has been applied not only to habeas petitions but has been expanded to civil rights complaints as well. Sulik v. Taney County, 316 F.3d. 813, 815 (8th Cir. 2003) (collecting cases). Absent proof of the exact date of delivering the IFP application and/or complaint to the prison authorities, the court will treat March 25, 2014, the date whereon Plaintiff signed his IFP application, as the filing date. See Cromwell v. King, 27 F. App'x 13, 14 (2d Cir. 2001)("In the absence of other evidence regarding the date on which Cromwell's petition was handed to prison officials for mailing, we consider his petition to have been filed on September 2, 1997, the date on which petitioner signed his in forma pauperis application. *See Rhodes v. Senkowski*, 82 F.Supp.2d 160, 165 (S.D.N.Y.2000) (collecting cases)."); Henshaw v.

(. . . footnote continued)

Plaintiff's Sixth Amendment claim is time barred because the applicable statute of limitations is only two years.

Although Plaintiff does not specifically mention the Civil Rights Act, 42 U.S.C. § 1983, because he is apparently seeking to vindicate his Sixth Amendment rights and he does not have a cause of action directly under the Constitution, a liberal reading of the Complaint requires the court to construe his Complaint as one invoking the court's jurisdiction pursuant to 42 U.S.C. § 1983. See, e.g., Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) ("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983."); Pauk v. Board of Trustees of City University of New York, 654 F.2d 856 (2d Cir. 1981)(where a federal statute governing civil action for deprivation of rights provides a remedy, i.e., 42 U.S.C. § 1983, an implied cause of action grounded on Constitution is not available), overruling on other grounds as recognized in, Brandman v. North Shore Guidance Center, 636 F.Supp. 877, 879 (E.D.N.Y. 1986).

The United States Court of Appeals for the Third Circuit has declared that for Section 1983 actions brought in the federal courts, which are located within the Commonwealth of Pennsylvania, the appropriate statute of limitations is two years. Fitzgerald v. Larson, 769 F.2d 160, 162 (3d Cir. 1985) ("the two-year Pennsylvania limitation for personal injury actions of 42 Pa.Const.Stat.Ann. § 5524 governs all § 1983 actions brought in Pennsylvania."). Because

Commissioner, Dept. of Correction, No. 99-848-SLR, 2000 WL 777868 (D. Del. June 8, 2000). See also Richardson v. Diagnostic Rehabilitation Center, 836 F.Supp. 252, 254 (E.D. Pa. 1993) ("While a complaint accompanied by an i.f.p. motion is usually not deemed 'filed' until leave to proceed in forma pauperis is granted or the filing fee is paid, the filing of the motion tolls the applicable statute of limitations.").

according to the Complaint, the dates of the events that gave rise to Plaintiff's cause of action all occurred prior to October 18, 2000, his Sixth Amendment claim is clearly time barred.[2]

The statute of limitations for False Claims Act claims is generally six years but the False Claims Act also provides a statute of repose of 10 years. 31 U.S.C. §3731(b).[3] See generally Scott K. Zesch, Annotation, When Does Statute of Limitations Begin to Run in Action Under False Claims Act (31 U.S.C.A. §§ 3729-3733), 139 A.L.R. Fed. 645 (1997) (discussing application of statute of limitations to false claims actions). As explained by one Court: "a civil action under the Act brought by a qui tam plaintiff must be commenced no more than (1) six years after the date on which the FCA violation is committed or (2) three years after the date when facts material to the right of action are known or reasonably should have been known by

---

[2] The Court acknowledges that if the Heck bar applies, as we find below that it does, then the statute of limitations has not even yet begun to run on the Sixth Amendment claim. Wolfe v. Perry, 412 F.3d 707, 714 (6th Cir. 2005) ("[a] cause of action under § 1983 that would imply the invalidity of a conviction does not accrue until the conviction is reversed or expunged, and therefore the statute of limitations does not begin to run until such an event occurs, if ever.")(quoting Shamaeizadeh v. Cunigan, 182 F.3d 391, 396 (6th Cir. 1999)). If however, the Heck bar does not apply, then the statute of limitations has certainly run.

[3] 31 U.S.C. §3731(b) provides as follows:

(b) A civil action under section 3730 may not be brought--

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

the qui tam plaintiff, whichever occurs last. A suit under the Act must, in any event, be brought no more than ten years after the date on which the violation occurred." To the extent that Plaintiff asserts in the Complaint that the operative facts occurred from April 9, 1999 to October 18, 2000, the ten year statute of repose in the False Claims Act would bar the present action given that Plaintiff is not deemed to have filed the present action until at the earliest, March 25, 2014 more than 13 years later.

In sum, it is clear from the face of the Complaint that Plaintiff's 6th Amendment and False Claims Act claims are barred by the applicable statutes of limitations.

**2. Plaintiff's Sixth Amendment Claim is barred by the <u>Heck</u> Doctrine.**

We take judicial note of the fact that on October 16, 2000, Plaintiff was convicted of, *inter alia*, two different counts of rape by forcible compulsion in the Court of Common Pleas of Allegheny County.[4]  We also take judicial notice of the habeas petition that Plaintiff filed in this Court, whereby he sought to challenge these convictions for, *inter alia*, rape.  <u>Jones v. Shannon</u>, No. 08-cv-1266 (W.D. Pa.).  We further note that DNA tests and samples taken from Plaintiff played a crucial role in convicting Plaintiff of those crimes.  <u>Id.</u>, (Answer, ECF No. 13 at 12 to 15, recounting the DNA evidence used to convict Plaintiff).

---

[4]  The dockets of Plaintiff's convictions are available at:

http://ujsportal.pacourts.us/docketsheets/CPReport.ashx?docketNumber=CP-02-CR-0009241-1999

http://ujsportal.pacourts.us/docketsheets/CPReport.ashx?docketNumber=CP-02-CR-0009242-1999

http://ujsportal.pacourts.us/docketsheets/CPReport.ashx?docketNumber=CP-02-CR-0009243-1999

(sites last visited 5/27/2014).

As noted previously, Plaintiff asserted that the dates of the event giving rise to his cause of action occurred from "4-9-1999 to 10-18-2000." ECF No. 7 at 2, ¶ IV.A. Although Plaintiff does not explain the significance of the dates, Plaintiff's previous habeas proceedings in this Court shed light on significance of the dates. April 9, 1999, is apparently the date on which Plaintiff's blood was taken or tested to see if the DNA profile obtained from Plaintiff's blood matched the DNA profile present in the seminal fluids retrieved from the scenes of the rapes. Jones v. Shannon, No. 08-cv-1266 (W.D. Pa. ECF No. 14-2 at 11 to 12, Trial Testimony: Lab Technician Lorenz testified that "His blood was submitted to the laboratory at a later time, April 9, 1999"). The significance of October 18, 2000 is not readily apparent, but October 16, 2000 is the date whereon, Plaintiff was convicted of the crimes of rape.

While the Complaint does allege that the "Lab represented false information," the Complaint does not explicitly state where or when the Lab did so. However, the clear inference is that the Lab did so at Plaintiff's criminal trial.[5] Any possible doubt was erased by Plaintiff's Declaration, wherein he clarifies that he meant to say that the Lab presented false information at his trial. See ECF No. 13 ("In Allegheny County, 'they' got the case against Mr. Jones wrong. For it is hard to explain to the jury 'RFLP; PCR [polymeriase chain reaction]; STR [short tandem repeat]; and Mitochondria 'DNA' Testing.' To which was the hope, the state relied upon, to wrongfully convict Jonathan Paul Jones. Confuse the jury. Abuse the jury. Convict the innocent. The plan of the prosecutor works well – unfortunately again, and again; over and over.

---

[5] In the caption of the Complaint, Plaintiff names the "Medical Examiner" and identified "Dr. Karl Williams and Lab Tech Lorenz." However in the Statement of Claim, Plaintiff references the "Forensic Lab." ECF No. 7 at 2, ¶ IV. B. It appears that Plaintiff is alleging that Lorenz worked in the Forensics Lab Division of the Allegheny County Medical Examiner's Office.

Look at the statistics.  <u>Wrongfully convicted</u> men, have been freed, over and over; and I seek the same.").

Given that that Plaintiff is claiming his Sixth Amendment rights were violated in the course of his prosecution for the rape crimes due to the Allegheny County Medical Examiner's Office lacking certification or due to there being internal strife and, and consequently, the DNA tests were erroneous, resulting in false evidence of Plaintiff's guilt being presented at Plaintiff's trial, Plaintiff's claims would necessarily call into question his convictions.  Because such claims would necessarily call into question his rape convictions, Plaintiff is barred by <u>Heck v. Humphrey</u>, 512 U.S. 477, 489-90 (1994)

In <u>Heck</u>, a state prisoner, convicted of voluntary manslaughter, brought a civil rights action against prosecutors and a police investigator, asserting that the defendants, acting under color of state law had engaged in an unlawful, unreasonable and arbitrary investigation, leading to Heck's arrest; had knowingly destroyed evidence that could have proven Heck's innocence and caused an illegal voice identification procedure to be used at his state trial.  <u>Heck</u>, 512 U.S. at 479.  The United States Supreme Court rebuffed such an effort and held as follows:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

<u>Heck</u> 512 U.S. at 486-87(footnote omitted).  Because Plaintiff's convictions have not been otherwise called into question, Plaintiff's Sixth Amendment claim against the Defendants, whom he claims "represented false information" is barred by <u>Heck</u> and must be dismissed for failure to

state a claim upon which relief can be granted.  See Chattams v. Rossi, No. 1:12–cv–666, 2012 WL 4087226, at *4 (S.D.Oh.  Sept. 17, 2012) ("Because a successful challenge against the defendants for their role in obtaining the allegedly illegal DNA evidence that resulted in plaintiff's prosecution and criminal conviction in 2006 for aggravated robbery would necessarily imply the invalidity of the underlying conviction and sentence imposed in that matter, plaintiff's claims for damages on that ground are barred by Heck.").[6]

### 3. False Claims Act

It is not entirely clear that Plaintiff understands the import of the False Claims Act. Plaintiff may be seeking to hold the Defendants liable for their allegedly presenting false evidence of or "false claims" of Plaintiff's guilt at Plaintiff's trial.  If that is what Plaintiff intends by his False Claims Act claim, he is mistaken as to the import of the False Claims Act.

---

[6]  This case is distinguishable from other cases where Heck was held not to bar the civil rights actions therein, as for example, Skinner v. Switzer, __U.S. __, 131 S.Ct. 1289, 1298 n. 12 (2011) and Grier v. Klem, 591 F.3d 672 (3d Cir. 2010).  Both of these cases permitted civil rights actions against state actors in order to allow the criminal defendant to seek DNA testing of evidence in the custody of the state actors.  The reasoning of such cases is that the results of such prospective testing would not *necessarily* call into question the validity of the criminal convict's conviction because the results of the testing could just as likely be inculpatory.  See  Skinner, 131 S.Ct. at 1298 ("Success in his suit for DNA testing would not 'necessarily imply' the invalidity of his conviction. While test results might prove exculpatory, that outcome is hardly inevitable; as earlier observed, *see supra*, at 1293 – 1294, results might prove inconclusive or they might further incriminate Skinner.");  Grier, 591 F.3d at 678 ("Even if Grier does prevail on this § 1983 claim, he will merely gain access to biological evidence, which in and of itself cannot invalidate or undermine his convictions.").  In contrast here, Plaintiff is apparently seeking to establish, as part of this lawsuit, that the results of the DNA testing which were introduced at his criminal trial were erroneous.  ECF No. 7 at 2, ¶ IV.C. ("The Lab represented false information.").  This would necessarily call into question his conviction.

The False Claims Act is a statutory enactment found at 31 U.S.C. § 3729, et seq.  As explained by one Court:

> The False Claims Act creates a cause of action for the United States to recover economic losses incurred from fraudulent claims for payment. 31 U.S.C. § 3729. The Attorney General pursues such actions on behalf of the government. Id. § 3730(a). Alternatively, under the statute's "qui tam" provisions, private whistleblowers—"relators"—who have evidence of fraud against the United States may assert the government's claim on its behalf. Id. § 3730(b). As reward for doing so, the relators share in the government's winnings, receiving a bounty of up to thirty percent of the government's proceeds "depending upon the extent to which the person substantially contributed to the prosecution of the action." Id. § 3730(d).

U.S. ex rel. Babalola v. Sharma, 746 F.3d 157, 164 (5th Cir. 2014).   As the United States Court of Appeals for the Third Circuit has explained:  "the FCA requires a plaintiff to show that '(1) the defendant [in the False Claims Act suit] presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.'"   U.S. ex rel.  Pilecki-Simko v. Chubb Institute, 443 F.App'x 754, 758 (3d Cir. 2011).

Instantly, the Complaint is utterly devoid of the necessary elements for stating a False Claims Act claim.  Cf. United States ex rel. Quinn v. Omnicare, 382 F.3d 432, 440 (3d Cir. 2004) (holding that an FCA action requires the identification of at least one specific claim, and that a relator's theory that false claims "must have been" submitted could not survive summary judgment and requiring that an FCA relator must come to court with a "claim in hand.").  See United States ex rel. Bartlett v. Tyrone Hosp., Inc., 234 F.R.D. 113, 121 (W.D.Pa. 2006); United States ex rel. Schmidt v. Zimmer, Inc., No. 00–1044, 2005 WL 1806502, at *3 (E.D.Pa. July 29,

2005). Accordingly, the False Claims Act claim should be dismissed for failure to state a claim upon which relief can be granted.[7]

## III. CONCLUSION

For the reasons set forth herein, it is respectfully recommended that Plaintiff's Complaint be dismissed before being served because the Complaint fails to state any claim upon which relief can be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right

---

[7] If Plaintiff chooses to file objections, Plaintiff may allege therein any facts so as to attempt to cure this deficiency, if he can. See Coulter v. Ramsden, 510 F. App'x 100, 104 (3d Cir. 2013) ("Last, a formal amendment to the complaint was unnecessary, because the objections Coulter filed on July 27, 2012 served the same purpose as an amendment in that Coulter used them to cure the defects in her complaint. *See generally Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 454 (3d Cir. 1996) (if amendment will cure defects in complaint, it must be permitted). After Coulter clarified her cause of action, it then was clear that a formal amendment would be futile, *see Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002), because of the insufficient factual assertion of the existence of a conspiratorial agreement.").

to appeal.  <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

<u>s/Maureen P. Kelly</u>
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Date:  June 3, 2014

cc:     The Honorable Mark Hornak
        United States District Judge

        Jonathan Paul Jones
        FT-2789
        SCI Coal Township
        1 Kelly Drive
        Coal Township, PA 17866